IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MUSTAFA OZGUR,

        Plaintiff,

        v.

**DAIMLER TRUCKS NORTH AMERICA LLC**,

        Defendant.

Case No. 3:19-cv-00432-JR

OPINION AND ORDER

**MOSMAN, J.**,

    On April 6, 2020, after an *in camera* review, Magistrate Judge Julie Russo held that certain emails in the possession of Defendant Daimler Trucks North America LLC ("Daimler"), which are sought by Plaintiff Mustafa Ozgur, are protected from disclosure by the attorney-client privilege. Order [ECF 52]. Mr. Ozgur filed objections to Judge Russo's order, requesting that I conduct my own *in camera* review to determine if the attorney-client privilege applies. Pl.'s Obj. [ECF 53]. I review Judge Russo's order *de novo. See* 28 U.S.C. § 636(b)(1)(C). Because I agree that the emails at issue are protected by the attorney-client privilege, I AFFIRM Judge Russo's order.

1  –  OPINION AND ORDER

# BACKGROUND

Mr. Ozgur is suing Daimler for age discrimination in connection with his unsuccessful job application for a "manufacturing engineering supervisor" position posted by Daimler. Compl. [ECF 1-1] at 1-2. At the time the job was posted, the position was held by a foreign national. Resp. [55] at 2. Daimler sought to sponsor that individual for an H1B1 visa, so that he could remain in the position. *Id.* In order to do so, Daimler was required to advertise the position and establish that there were no qualified U.S. citizens (or others lawfully present in the U.S.) who were willing and able to perform the position. *Id.* Regulations also required Daimler to submit proof to the Department of Labor that there were no qualified U.S. citizens/residents who could fill the position. Obj. [53] at 2.

In order to help it comply with Department of Labor regulations and other immigration laws related to the H1B1 visa process, Daimler retained outside immigration counsel Nathan Graham. Resp. [55] at 2. The disputed emails are a chain discussion involving Mr. Graham, Anthony Long (the Daimler Recruiting Manager who oversaw the hiring process for the posted position), and Matt Butson (a Daimler Hiring Manager who reviewed the candidates), as well as a few other Daimler employees. *See* Resp. [55] at 3-4; Obj. [53] at 5-6. Based on my *in camera* review, the general subject of the disputed emails is the qualifications (or lack thereof) of the rejected candidates for the supervisor position, including Mr. Ozgur.

# DISCUSSION

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). In the corporate realm, the privilege can also protect communications between non-attorney

corporate employees when the communications are made for the purposes of obtaining legal advice from an attorney. *Cf. In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758 (D.C. Cir. 2014) ("[C]ommunications made by and to non-attorneys serving as agents of attorneys in internal investigations are routinely protected by the attorney-client privilege.").

Moreover, the privilege "applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). And when an attorney is hired to give advice, there is a rebuttable presumption that the lawyer is hired to give "legal advice." *Id.*

Based upon my *in camera* review of the disputed emails, the communications therein were made for the purpose of obtaining legal advice from Mr. Graham. As discussed above, the Department of Labor requires that Daimler submit proof that there were no qualified U.S. citizens/residents for the open position in order to proceed with the H1B1 visa process. Daimler sought Mr. Graham's guidance on how to comply with that regulation. Specifically, Mr. Long provided Mr. Graham with Daimler's explanations for why it believed the U.S. citizens/residents (including Mr. Ozgur) who applied for the supervisor position were *not* qualified for the job. After reviewing these explanations, Mr. Graham described additional information that needed to be gathered in order to comply with the regulations. To gather that information, Mr. Long reached out to Mr. Butson and asked him to provide the information requested by Mr. Graham. Much of the disputed emails involve Mr. Long acting as an intermediary between Mr. Butson, who is the principal source of information on each candidate's qualifications, and Mr. Graham. Other Daimler HR personnel are sometimes included in the email chain, but they contribute little of substance.

3   –   OPINION AND ORDER

In short, the emails reveal an iterative process in which Mr. Long gathers information and presents it to Mr. Graham for the purpose of obtaining legal advice. While Mr. Graham is not included in all of the emails, especially the ones between Mr. Long and Mr. Butson, those emails are between two (or sometimes more) corporate employees who together constitute the same corporate client that is seeking the legal advice. I think the attorney-client privilege squarely covers communications between corporate employees who are discussing the types of things they need to discuss in order present a question or information to a lawyer for the purpose of obtaining legal advice.

The only specific emails that stand out as possibly different are a few emails exchanged between Mr. Long and Mr. Butson prior to Mr. Graham becoming involved.  The first of these, sent by Mr. Long to Mr. Butson on May 10, 2017, requests that Mr. Butson review the resumes of candidates for the open position and to reply back with what requirements they do not meet, if any. Mr. Butson replies back with information on the candidates' qualifications, and it seems at some point that those replies are forwarded to Mr. Graham, who responds for the first time in an email sent on May 18, 2017. At least according to the emails before me, that is when Mr. Graham enters the scene. Thus, it is not clear whether these initial emails—where Mr. Long reaches out to Mr. Butson—were made at the instruction or the behest of Mr. Graham. Regardless, it appears that the information sought by Mr. Long in the initial emails is the exact information that was required to obtain the legal advice from Mr. Graham. In other words, the context suggests that Mr. Long initiated the conversation with Mr. Butson for at least the partial purpose of seeking legal advice from Mr. Graham. Therefore, these initial communications are also covered by the attorney-client privilege.

## CONCLUSION

For the foregoing reasons, Judge Russo's ORDER [52] is AFFIRMED.

IT IS SO ORDERED.

DATED this 18th day of May, 2020.

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge

5 – OPINION AND ORDER